RECEIVED
USDC, ... OF LA
RO... RK
DAT 12  12  05
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JEFFERY A. RODGERS,<br>Appellant | CIVIL ACTION<br>NO. CV05-0125-A |
| VERSUS | |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Jeffery A. Rodgers filed applications for disability insurance benefits (Tr. p. 73) and supplemental security income (Tr. p. 201) on February 14, 2002, alleging a disability onset date of October 1, 2001, due to major depression, recurrent, and a history of attention deficit disorder (Tr. p. 84). Those applications were denied initially by the Social Security Administration ("SSA") (Tr. p. 28).

A de novo hearing was held before an administrative law judge ("ALJ") on October 8, 2003 (Tr. p. 246), at which Rodgers was present with his attorney, a witness, and a vocational expert ("VE"). The ALJ found that, although Rodgers suffers from "severe" depressive disorder, learning disorder not otherwise specified, adult antisocial behavior, and attention deficit disorder, he has the residual functional capacity to perform physical activity

except as limited to simple unskilled jobs not requiring excessive exposure to work pressures or changes in a work setting, and can perform work which exists in significant numbers in the national economy such as kitchen helper, laundry folder, and laundry worker. The ALJ concluded that Rodgers was not disabled at any time through the date of his decision on February 27, 2004 (Tr. pp. 23-24).

Rodgers requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Rodgers next filed this appeal for judicial review of the Commissioner's decision. Rodgers raises the following issues for review on appeal:

> 1. The Commissioner erred by not finding that Rodgers suffers from an impairment or a combination of impairments which meet or equal a listing under the Social Security Act.
>
> 2. The Commissioner erred by failing to request the presence of a medical expert at Rodgers' hearing.
>
> 3. The ALJ erred in interpreting the vocational expert's testimony as to Rodgers' ability to engage in substantial gainful activity.

Rodgers' appeal is now before the court for disposition.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability,

2

income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists

3

in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law.

Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

### Issue 1 - Listings

First, Rodgers contends the Commissioner erred by not finding that he suffers from an impairment or a combination of impairments which meet or equal a listing under the Social Security Act. Specifically, Rodgers argues he meets Listing 12.04, Affective Disorders.

A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990). See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 110 S. Ct. at 891.

Rodgers contends he meets the requirements in both 12.04(A) and 12.04(B). The ALJ found that Rodgers meets the requirements of Listing 12.04(A) because he suffers from a depressive disorder "that is attended by signs and symptoms characteristic of disorders

5

described in Section 12.04(A)" (Tr. p. 18). However, the ALJ did not find Rodgers meets Section B because he only suffers from mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace (Tr. p. 18). Also, Rodgers has not had repeated episodes of decompensation of extended duration (Tr. p. 18).

In order to meet Section B of Listing 12.04, Rodgers must prove he has least *two* of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. As defined in Listing 12.00(C), "marked" means more than moderate but less than extreme; a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis."

Rodgers argues there is a history of marked restrictions in his activities of daily living, as reflected in the SSA "work up" document discussing the Natchitoches Mental Health Center diagnosis (Tr. pp. 115-116) and in the diagnosis of consultative examiner Dr. Daniel J. Lonowski, Ph.D. (Tr. p. 190).

The administrative transcript includes medical records from the Natchitoches Mental Health Unit from January 1998 through February 2002. Dr. Patrick T. Wheat, a staff psychiatrist at the Natchitoches Mental Health Clinic, diagnosed and treated Rodgers for a moderate single episode of major depression and a history of attention deficit disorder in January 2001 (Tr. p. 163). Dr. Wheat noted Rodgers' symptoms of poor attention span, hyperactivity, stubborn behavior, borderline IQ, lying, stealing, and poor social skills, and further noted that stimulants improved his attention and ability to relate with other people (Tr. p. 162).

In a Psychiatric Review Technique Form filled out after a review of Rodgers' medical records, Dr. William R. Berzman, Ph.D. concluded that Rodgers suffers from depression secondary to grief and situational factors (Tr. p. 178), with mild restrictions in his activities of daily living, mild difficulties in maintaining social functions, and mild difficulties in maintaining concentration, persistence, or pace (Tr. p. 185).

Dr. Daniel J. Lonowski, Ph.D., examined Rodgers in March 2003, while Rodgers was incarcerated, and diagnosed learning disorder NOS, a history of attention deficit hyperactivity disorder, and recurrent major depressive disorder in partial remission, and concluded that, although Rodgers does not have any physical limitations that would prevent him from working, he would have difficulty completing physical activities (sitting, standing,

walking, lifting, carrying or handling objects) on a regular basis due to clinical depression and may not be able to make adaptations to rapidly changing social situations because of his learning disability and depression (Tr. pp. 188-191). Dr. Lonowski also noted that Rodgers drives, manages money adequately, is capable of purchasing items, cooks, tells time, helps his mother around the house, sees and hears well, communicates reasonably, has adequate memory functioning, maintains concentration with adequate persistence and pace to task completion, and is able to interact socially (Tr. pp. 188-189).

There is no medical evidence that Rodgers has marked difficulties in any of the areas of Listing 12.04(B). Although Rodgers asks this court to construe Dr. Lonowski's statement as implying that Rodgers has marked difficulties in at least two areas of functioning in 12.04(B), that interpretation of Dr. Lonowski's statement does not fit the definition of "marked" because it does not indicate an inability to "function independently, appropriately, effectively, and on a sustained basis" in two of the areas.

Finally, Rodgers contends his ADHD, adult anti-social behavior, and learning disorder, considered together with his depression, meet or equal a listing. However, Rodgers does not specify which listing he equals or explain how his conditions equal the listing. Moreover, Dr. Lonowski's evaluation dealt with all of

Rodgers' symptoms together. Rodgers erroneously contends the ALJ failed to consider whether the combined effects of his impairments equal a listing; in fact, the ALJ stated he did not find Rodgers' impairments medically equal any listing (Tr. p. 17).

Therefore, substantial evidence supports the Commissioner's conclusion that Rodgers does not meet a listing.

Issue 2 - Medical Expert

Next, Rodgers contends the Commissioner erred by failing to request the presence of a medical expert at Rodgers' hearing in order to clarify whether Rodgers meets Listing 12.04(B).

The ALJ employed the services of a psychologist, Dr. Lonowski, for a consultative examination of Rodgers. Dr. Lonowski did not state that Rodgers had marked limitations in at least two areas of functioning, nor did Dr. Wheat or Dr. Berzman.[1] Therefore, Rodgers failed to meet his burden of proving he meets or equals a listing. The ALJ was not required to employ another medical expert in this case. This issue is meritless.

Issue 3 - Vocational Expert

Finally, Rodgers contends the ALJ erred in interpreting the

---

[1] Although Rodgers contends the Natchitoches Mental Health Center (Dr. Wheat) found he had marked limitations in all four areas in Listing 12.04(B), Rodgers actually refers to a case summary by an unidentified SSA employee who made conclusions which are not set forth in or supported by Dr. Wheat's report of January 9, 2001 (Tr. pp. 162-163) and which were apparently not adopted by the ALJ (Tr. p. 115). That summary is not medical evidence.

vocational expert's testimony as to Rodgers' ability to engage in substantial gainful activity.

The ALJ posed a hypothetical question to the VE (Tr. pp. 290-291), concerning work which can be performed by a 28 year old person with Rodgers' work experience, who was a special education student in high school, who can drive in areas with which he is familiar, who can read, write and do basic arithmetic, who suffers from a learning disorder, major depression and adult anti-social behavior with only moderate symptoms, attention deficit disorder, and symptomatology of hyperactivity, stubborn behavior, borderline IQ, lying, stealing, and poor social skills; however, treatment and medication have improved his attention span and ability to relate to other people, the ability to manage his own funds, and his ability to understand, remember, and carry out short, simple instructions. The hypothetical person also had a mild limitation in the ability to understand, remember, and carry out detailed instructions, moderate limitations with regard to appropriately responding to work pressures in a usual work setting, and moderate limitations in responding appropriately to changes in a routine work setting.

In response to this hypothetical, the VE testified that such a person could work as kitchen help, such as a basic dishwasher (unskilled, medium physical work, 6300 jobs in Louisiana and 248,000 nationally), a folder in a laundry (unskilled, light

physical work, 9500 jobs in Louisiana and 615,000 nationally), and putting things in the machines in a laundry (unskilled, light physical work, 3000 jobs in Louisiana and 112,000 nationally) (Tr. pp. 292-293).

Rodgers' attorney added an additional limitation to the hypothetical question, of difficulty completing activities such as sitting, standing, walking or lifting on a regular basis due to serious depressive symptomatology, difficulty adapting to rapidly changing social situations, and very slow functioning when engaging in any type of activities (Tr. p. 293). The VE responded that the inability to "complete" work activities of sitting, standing, walking or lifting on a regular basis would eliminate all jobs, but the social situation problem would not affect the jobs he had described (Tr. p. 294).

Rodgers contends the ALJ erred in disregarding the VE's response to the amended hypothetical question, as to the person's inability to work. However, the ALJ found the limitations posed in the amended hypothetical were "rebutted" by Dr. Lonowski's finding that those limitations were only moderate. It is noted that, when Dr. Lonowski conducted his evaluation, Rodgers was incarcerated and admitted his depression had worsened due to his confinement, although his medications were alleviating his symptoms (Tr. pp. 188-189). The medical evidence from Rodgers' treating psychiatrist, Dr. Wheat, shows Rodgers' depression and anxiety

11

respond well to medication (Tr. pp. 152-174). Therefore, the ALJ did not err in finding Rodgers is able to work.

Since substantial evidence supports the Commissioner's findings that Rodgers is able to perform work which exists in significant numbers in the national economy, this ground for relief is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner of Social Security be AFFIRMED and that Rodgers' appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this /2o\_ day of December, 2005.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE